IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SEAN HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:24-cv-374-RAH-CWB |
| ) | |
| CODY AMERSON, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   Introduction**

Sean Henderson ("Plaintiff") filed this action against Cody Amerson and Brady Amerson ("Defendants") in their individual capacities—asserting claims under the Fourteenth Amendment Due Process Clause, the Fourteenth Amendment Equal Protection Clause, and 42 U.S.C. § 1981. (*See* Doc. 22).  In short, Plaintiff alleges that Defendants subjected him to excessive force due to racial animus while he was a pretrial detainee in the custody of the Elmore County, Alabama Sheriff's Department.

Now pending for resolution is a partial motion to dismiss filed by Defendants collectively. (*See* Doc. 26).  For the reasons set out below, the Magistrate Judge recommends that the motion be granted such that this action hereafter proceeds only on Plaintiff's Fourteenth Amendment Due Process Clause claim.[1]

---

[1] The "facts" relied upon herein are gleaned from the allegations in the Amended Complaint, the contents of those documents properly annexed thereto, and matters of which judicial notice may be taken.  *See, e.g., Mack v. Alabama Dep't of Youth Servs.*, 106 F. Supp. 2d 1256, 1261 (M.D. Ala. 2000); *see also Collier v. Buckner*, 303 F. Supp. 3d 1232, 1258 n.24 (M.D. Ala. 2018) (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).

1

## II. Factual and Procedural Background

Plaintiff is an African American male, and Defendants are white males employed by the Elmore County, Alabama Sheriff's Department. (Doc. 22 at ¶¶ 2-4). On or about April 22, 2024, Cody Amerson and another officer arrested Plaintiff for alleged domestic violence. (*Id*. at ¶ 5). According to Plaintiff, Defendants approached him while he was changing into his jail clothes inside the bathroom of the Elmore County Jail. (*Id*. at ¶¶ 11, 14). Plaintiff further alleges that Cody Amerson punched him on the left side of his face and that Brady Amerson punched him on the right side of his face—causing him to fall to the floor. (*Id*. at ¶¶ 15-17). Plaintiff alleges that Defendants then began beating, punching, kicking, and hitting him, caused him to bleed profusely, and repeatedly told him, "You ain't never going to put your hands on a white girl (Plaintiff's child's mother is Caucasian) again!" (*Id*. at ¶¶ 18-19). Plaintiff asserts that he suffered a broken nose, a ruptured eardrum, and bruised ribs as a result of the incident. (*Id*. at ¶ 21). And Plaintiff denies that he used any type of physical force against Defendants. (*Id*. at ¶¶ 22-29).

Defendants filed a motion to dismiss that seeks the dismissal of Plaintiff's claims under the Equal Protection Clause of the Fourteenth Amendment and under 42 U.S.C. § 1981. (*See* Docs. 26 & 27). Plaintiff's claims for excessive force under the Fourteenth Amendment Due Process Clause are not subject to the pending motion. (Doc. 27 at p. 2).

## III. Legal Standard

To survive a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007). The standard was explained in *Twombly* and refined in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

*Iqbal,* 556 U.S. at 678-79 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.* at 680; *Mamani v. Berzain,* 654 F. 3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After all conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the court to assume the veracity of well-pleaded factual allegations and to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs,* 486 F. App'x 3, 6 (11th Cir. 2012) (citation omitted). Establishing facial plausibility, however, requires more than stating facts that establish a mere possibility of legal culpability. *See Mamani,* 654 F. 3d at 1156 ("The possibility that – *if* even a possibility has been alleged effectively – these defendants acted unlawfully is not enough for a plausible claim.") (emphasis in original). Plaintiffs instead are required to "allege more by way of factual content to nudge [their] claim[s] … across the line from conceivable to plausible." *Iqbal,* 556 U.S. at 683 (internal editing and citation omitted).

In ruling on a 12(b)(6) motion, a court generally may consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.

3

*See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] court may consider a document attached to a motion to dismiss ... if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged. ... [A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement[.]") (citation omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The court must accept all of the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). And the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The court need not, however, accept as true any legal conclusions that are couched in the form of factual allegations. *See Diverse Power, Inc. v. City of LaGrange, Georgia*, 934 F.3d 1270, 1273 (11th Cir. 2019) (citing *Twombly*, 550 U.S. at 555); *see also Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." ).

IV.     **Discussion**

    A.     **Plaintiff's claims under the Fourteenth Amendment Equal Protection Clause**

Brady Amerson contends that Plaintiff has failed to state a violation of the Equal Protection Clause of the Fourteenth Amendment because he does not allege any facts demonstrating how

4

other similarly situated persons were treated and does not reference a similarly situated comparator in the First Amended Complaint. (Doc. 27 at p. 8). In response, Plaintiff acknowledges that he has failed to name a similarly situated comparator and concedes that his Fourteenth Amendment Equal Protection Clause claims are due to be dismissed. (Doc. 31 at p. 2 n.1).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); U.S. Const. amend. XIV, § 1. To state a claim under the Equal Protection Clause, a plaintiff must allege that he is "similarly situated" to individuals "who received more favorable treatment" and that "his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (cleaned up). "Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient." *McFarlin v. Rick*, No. 3:23CV24698, 2024 WL 1723557, at *2 (N.D. Fla. Mar. 14, 2024), *report and recommendation adopted*, No. 3:23CV24698, 2024 WL 1718079 (N.D. Fla. Apr. 19, 2024); *see GJR Inv., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1367-68 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir.2010); *Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987). Alternatively, a plaintiff may assert an equal protection claim as a "class of one." *Holloway v. Lawson*, No. 2:20-cv-148, 2022 WL 18159030, at *4 (M.D. Ala. Dec. 2, 2022), *report and recommendation adopted*, No. 2:20-cv-148, 2023 WL 131100 (M.D. Ala. Jan. 9, 2023). "A 'class of one' equal protection claim does not allege discrimination against a protected class, but rather it alleges that the plaintiff 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Wilder v.*

*Aramark*, No. 3:17CV239, 2017 WL 4159382, at *11 (N.D. Fla. Aug. 9, 2017), *report and recommendation adopted*, No. 3:17CV239, 2017 WL 4157535 (N.D. Fla. Sept. 19, 2017) (quoting *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000))) (internal quotation marks omitted). "The same 'similarly situated' standard applies whether an equal protection claim is brought under a 'class of one' theory or a traditional theory of unlawful discrimination." *Clark v. Walton Cnty. Sheriff's Off.*, No. 3:24CV414, 2024 WL 5264941, at *2 (N.D. Fla. Nov. 15, 2024), *report and recommendation adopted*, No. 3:24-CV-414, 2024 WL 5264428 (N.D. Fla. Dec. 31, 2024) (citing *Griffin Indus.*, 496 F.3d at 1204-05). "Indeed, the 'similarly situated requirement must be rigorously applied in the context of class of one claims.'" *Id.* (quoting *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009)) (internal quotation marks omitted).

The only facts asserted by Plaintiff in support of his Equal Protection Clause claims are that excessive and unnecessary force was used against him, that it was based upon his race, that Brady Amerson was a state actor, and that Brady Amerson denied him equal protection of the law because of his race. (Doc. 22 at ¶¶ 55-58). Because Plaintiff has not alleged any facts to show that similarly situated pretrial detainees received more favorable treatment with regard to use of force, the Amended Complaint fails to state a plausible Equal Protection Clause claim. *See Mann v. Joseph*, 805 F. App'x 779, 785 (11th Cir. 2020) (affirming dismissal where the plaintiff "identified no comparator, much less a similarly-situated nonminority [comparator], in his complaint who the officers had treated differently than him."); *see also Smith v. Deal*, 760 F. App'x 972, 975 (11th Cir. 2019) (finding that the plaintiff's allegations were insufficient to withstand a motion to dismiss because "conclusory allegations that Division employees 'intentionally treated [him] differently from other similarly situated' people of 'other races

6

and national origin' lacked any supporting facts necessary to state a plausible claim that he was denied equal protection of the law"); *Ashley v. Tucker*, No. 1:23-CV-3564, 2023 WL 12007026, at *3 (N.D. Ga. Sept. 8, 2023), *report and recommendation adopted*, No. 1:23-CV-3564, 2023 WL 12007025 (N.D. Ga. Sept. 26, 2023). Accordingly, and as Plaintiff has conceded (*see* Doc. 22 at p. 2, n.1), all Equal Protection Clause claims are due to be dismissed.[2]

### B.     Plaintiff's claims under 42 U.S.C. § 1981[3]

Defendants contend that Plaintiff's § 1981 claims fail because Plaintiff does not allege an impaired contractual relationship. (Doc. 27 at pp. 5-6). In support of their contention, Defendants rely upon the precedent of *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) and *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 890 (11th Cir. 2007). (*Id.* at p. 6). Plaintiff in turn asserts that those cases both applied the "make and enforce contracts" clause and that he is traveling instead under the "full and equal benefit" clause. (Doc. 31 at p. 7).

The text of § 1981 provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

---

[2] Plaintiff asserts his equal protection claims in sections VIII and IX of the Amended Complaint. (*See* Doc. 22 at pp. 4-5). Plaintiff makes the same allegations in both sections; however, Brady Amerson is named as the defendant in each section. Presumably such repetition was a typographical error and reference to Cody Amerson was intended in one of those sections as appearing elsewhere in the Amended Complaint. (*See id*. at pp. 3-4). To the extent Plaintiff also intended to assert an equal protection claim against Cody Amerson, it likewise would fail.

[3] "Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983." *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008).

42 U.S.C. § 1981(a). In *Domino's Pizza*, the Supreme Court stated that "[a]ny claim brought under § 1981 ... must initially identify an impaired 'contractual relationship,' … under which the plaintiff has rights." *Domino's Pizza*, 546 U.S. at 476; *see also Kinnon*, 490 F.3d at 890 ("To state a claim under § 1981, a plaintiff must identify 'an impaired "contractual relationship" ... under which the plaintiff has rights.'") (quoting *Domino's Pizza*, 546 U.S. at 476). Plaintiff thus argues that *Domino's Pizza* and *Kinnon* "are actually contract dispute cases" and do not apply here.

The plaintiff in *Domino's Pizza* filed suit under § 1981 to assert that Domino's breached a contract with his company because of his race and that in doing so Domino's interfered with his right to contract on behalf of his principal. 546 U.S. at 473-75. The Supreme Court held that § 1981 does not protect an agent's right to negotiate a contract on behalf of a principal, but rather applies only where the plaintiff personally has rights under the contract. *Id*. at 475-76. In reaching its decision, the Supreme Court expressly emphasized the contract requirement:

> Consistent with our prior case law, and as required by the plain text of the statute, we hold that a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes "to make and enforce." Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's. Because the District Court correctly recognized and applied these principles, the Ninth Circuit erred in reversing its judgment.

*Id*. at 479-80 (footnote omitted)

Plaintiff points to *Mazloum v. District of Columbia Metro. Police*, 522 F. Supp. 2d 24 (D. D.C. 2007) where the court distinguished *Domino's Pizza*. *Mazloum* involved allegations that off-duty officers used excessive force on the plaintiff at a nightclub. *Id*. at 30, 37. Relying on *Domino's Pizza*, the defendants argued that the plaintiff's claim under 42 U.S.C. § 1981 failed to identify an "impaired contractual relationship under which the plaintiff has rights." *Id*. at 37. The court distinguished *Domino's Pizza* on grounds that it had held "because the plaintiff in his

personal capacity had no rights or liabilities under the contract, he lacked standing to sue for impairment of that contract under Section 1981." *Id*. The court reasoned that "*Domino's* does not require a contractual relationship for a Section 1981 claim, but only requires that where a contract is the basis of a Section 1981 claim, the plaintiff must have rights to assert under the contract":

> In this case, the off-duty officers latch on to some of the broad language in *Domino's* to argue that the case precludes any claim under Section 1981 that does not involve a strict contractual relationship. Although it is true that some of the Supreme Court's statements could arguably be read to imply such a result, a close reading reveals that the Supreme Court's holding was limited to the "make and enforce" contracts clause of Section 1981. Because plaintiff's claim in this case arises out of the "full and equal benefit" clause of Section 1981, the Court concludes that a lack of contractual privity does not foreclose plaintiff's claim.
>
> At the outset, it is worth noting that the plaintiff in *Domino's* explicitly framed his claim in terms of the "make and enforce contracts" clause of the statute. 546 U.S. at 475, 126 S.Ct. 1246 (establishing that plaintiff argued that he had a cause of action because he "made and enforced contracts" for the corporation). Thus, the Supreme Court did not have occasion to discuss any other part of Section 1981, and in particular the opinion makes no reference to the "equal benefit" clause of the statute.

*Id*. at 37-38.

After noting other circuit cases pre-dating *Domino's Pizza*, which had "maintained ... allegations of overt acts of discrimination" that did not involve contractual relationships, the court in *Mazloum* stated that the operative question was "whether the Supreme Court intended *Domino's* to alter the structure of claims under the equal benefit clause." *Id*. at 38-39. Recognizing that *Domino's* was devoid of any reference to the equal benefit clause and dealt exclusively with the "make and enforce contracts" clause, the court refused to apply the logic from *Domino's*:

> A claim involving the deprivation of the equal benefit of laws need not rely on a contractual obligation to create any rights: the applicable substantive law already performs that role. Moreover, if the Supreme Court had meant to preclude *any* claim under Section 1981 in the absence of a contract, including causes of action derived from the equal benefit clause, then surely the Court would have made at least a passing reference to the equal benefit clause and the body of authority it was displacing. But it did not, and this Court now concludes that plaintiff need not rely

9

> on a contractual relationship to proceed with his Section 1981 claim based on the equal benefit clause.

*Id*. at p. 39 (emphasis in original).[4]

---

[4] Recognizing that the Supreme Court used "sweeping language that may be read to encompass the entire scope of Section 1981," the court was not convinced that *Domino's Pizza* was intended to foreclose civil actions not arising out of contract—as "[t]he issue simply was not presented." *Id*. To put into context the "sweeping language" used in *Domino's Pizza* that the *Mazloum* court referenced, the following from *Domino's Pizza* will be quoted at length:

> As an alternative to ignoring corporation and agency law, McDonald proposes a new test for § 1981 standing: Any person who is an "actual target" of discrimination, and who loses some benefit that would otherwise have inured to him had a contract not been impaired, may bring a suit. Under this theory, an individual is the "actual target" if he was the *reason* a defendant chose to impair its contractual relationship with a third party. McDonald's formulation simply ignores the explicit statutory requirement that the plaintiff be the "perso[n]" whose "right ... to make and enforce contracts," § 1981(a), was "impair[ed]," § 1981(c), on account of race. It is just the statutory construction we have always rejected.
>
> ...
>
> McDonald resorts finally to policy arguments. Unless his reading of the statute prevails, he warns, many discriminatory acts will go unpunished. Corporations, for instance, may choose not to bring suit for the racially motivated contract breach. It is not likely to be a common occurrence that the victim of a contract breach will forgo a potent available remedy. Injured parties "usually will be the best proponents of their own rights," *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (plurality opinion). And if and when "the holders of those rights ... do not wish to assert them," *id*., at 113-114, 96 S.Ct. 2868, third parties are not normally entitled to step into their shoes. Moreover, § 1981 is only one of a multitude of civil rights statutes. Many of McDonald's hypothetical examples of unpunished discrimination would in fact be reachable under Title VII—or even under general criminal law. *See, e.g.*, Brief for Respondent 27 (concerning a scenario in which "Domino's officials had beaten up McDonald in an attempt to intimidate him"). The most important response, however, is that nothing in the text of § 1981 suggests that it was meant to provide an omnibus remedy for *all* racial injustice. If so, it would not have been limited to situations involving contracts. Trying to make it a cure-all not only goes beyond any expression of congressional intent but would produce satellite § 1981 litigation of immense scope. McDonald's theory would permit class actions by all the minority employees of the nonbreaching party to a broken contract (or, for that matter, minority employees of any company failing to receive a contract award), alleging that the reason for the breach (or for the refusal to contract) was racial animus against them.

*Domino's Pizza*, 546 U.S. at 478-79 (emphasis in original).

Defendants contend that the same argument has previously been rejected by this court in *Keith v. Agrella*, No. 1:22-cv-418, 2024 WL 1349016, at *7 (M.D. Ala. Mar. 29, 2024). (Doc. 32 at p. 3). There, the plaintiff expressly argued that she should be allowed to proceed with a § 1981 claim for false arrest based upon her race and relied upon *Mahone v. Waddle*, 564 F.2d 1018 (3rd Cir. 1977)—a case pre-dating *Domino's Pizza*. *Id*. The court explained its disagreement as follows:

> This Court, bound only by decisions of the Eleventh Circuit and Supreme Court of the United States, agrees with the Defendants. Notably, *Mahone* was decided almost thirty years before the Supreme Court decided *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006). In *Domino's Pizza*, the Supreme Court opined that "nothing in the text of § 1981 suggests that it was meant to provide an omnibus remedy for all racial injustice." *Id*. at 476. "If so, it would not have been limited to situations involving contracts." *Id*. Rather, "[a]ny claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Id*. at 476. The Eleventh Circuit has made this observation as well. *See Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 890 (11th Cir. 2007) (quoting *Domino's Pizza*, 546 U.S. at 476). **Without caselaw from this Circuit supporting Keith's argument, the Court finds that Keith has failed to allege a violation of a right protected by § 1981, and Count III is due to be dismissed**. *See Jones v. Flathmann*, 2008 WL 918702, at *3 (M.D. Ala. Apr. 1, 2008) (granting summary judgment "[b]ecause § 1981 protects against racial discrimination in the making and enforcing of contracts, however, and not excessive force as alleged in the Complaint"); *see also Bartley v. Kim's Enter. of Orlando, Inc.*, 2010 WL 11626849, at *4 (M.D. Fla. Dec. 20, 2010) (dismissing § 1981 claim because plaintiff, who claimed Fourth Amendment violations, "fail[ed] to identify the impairment of any contractual relationship"); *Lapread v. Buis*, 2024 WL 916541, at *2 (M.D. Fla. Mar. 4, 2024) (finding the same).

*Id*. at *8 (emphasis added).

While it is true that other courts have found § 1981 to extend beyond contract-related discrimination, that is not the current view in either the Eleventh Circuit or this court. Because Plaintiff has failed to identify an impaired contractual relationship under which he has rights, Defendants are entitled to dismissal of Plaintiff's § 1981 claims.

## V.  Conclusion

For the reasons set forth above, it is the **RECOMMENDATION** of the Magistrate Judge that Defendants' pending motion to dismiss (Doc. 26) be **GRANTED** such that Plaintiff's claims under the Fourteenth Amendment Equal Protection Clause and § 1981 are dismissed.

It is **ORDERED** that all objections to this Recommendation must be filed no later than **July 7, 2025**.  An objecting party must identify the specific portion(s) of all factual findings/legal conclusions to which objection is made and must describe in detail the basis for each objection.  Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the findings or recommendations to which objection is made.  The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings.  *See* 28 U.S.C. § 636(b)(1)(C).  A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations.  The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice.  *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 23rd day of June 2025.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**